IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

BRADLEY N. GOODSON,            )
                               )
        Plaintiff,             )
                               )
                               )    CIV-13-1322-D
v.                             )
                               )
MICHAEL BRYANT, et al.,        )
                               )
        Defendants.            )

REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, has brought this civil rights action pursuant to 42 U.S.C. § 1983. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B). Before the Court are Defendants Bryant, Weatherly, Hunt, and McDonald's Motion to Dismiss or in the alternative Motion for Summary Judgment (Doc. # 34) and Supplemental Motion to Dismiss or in the alternative Motion for Summary Judgment (Doc. # 47). Plaintiff has responded to the Motions. (Doc. # 48). Defendants Bryant, Weatherly, Hunt, and McDonald have also caused the filing of a Special Report consistent with <u>Martinez v. Aaron</u>, 570 F.2d 317 (10th Cir. 1978)("Special Report"). (Doc. # 33). For the following reasons, it is recommended that Defendants' Motion for Summary Judgment and Supplemental Motion for Summary Judgment be granted and that judgment enter in favor of Defendants and against the Plaintiff.

I. Background

On February 7, 2012, Plaintiff was charged in the District Court of Jefferson County,

1

Oklahoma, Case No. CF-2012-3, with the offense of Violation of Child Custody Court Order after former conviction of two or more felonies. Special Report, Ex. 16. Plaintiff entered a guilty plea to this charge on September 1, 2012, and on November 6, 2012, Plaintiff was sentenced to a 35-year term of imprisonment. Special Report, Ex. 16. Plaintiff was detained in the Jefferson County Jail ("JCJ") from March 3, 2012 until January 9, 2013, when he was transferred to the custody of the Oklahoma Department of Corrections ("ODOC") to serve his sentence. Special Report, Exs. 1 (JCJ Booking Sheet), 6 (affidavit, Ron Weatherly).

II. Claims Asserted in Amended Complaint

Plaintiff filed his original Complaint in this action on December 16, 2013. (Doc. # 1). In his Complaint, Plaintiff alleged violations of his First, Fourth, Eighth, and Fourteenth Amendment rights against Defendants Bryant, Weatherly, Hunt, McDonald, Jones, Watkins, and "John Doe." On May 7, 2014, Defendants Bryant, Weatherly, Hunt, and McDonald filed their Motion to Dismiss or in the alternative Motion for Summary Judgment, as well as the Special Report. Defendant Watkins filed a Motion to Dismiss on the same date. Plaintiff subsequently requested and was granted leave to file an amended complaint, and on July 8, 2014, Plaintiff's Amended Complaint was filed. (Doc. # 46). The Amended Complaint names only Mr. Bryant, Mr. Weatherly, Mr. Hunt, and Mr. McDonald as Defendants, and the remaining Defendants were therefore terminated from the action.[1]

In the Amended Complaint, Plaintiff alleges in count one that Defendants Bryant,

---

[1] Defendant Watkins' Motion to Dismiss is deemed moot as a result of her termination from the lawsuit.

Weatherly, Hunt, and McDonald were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment when they delayed transporting him to a hospital for medical treatment for strep throat and a high fever in July 2012. In count two, Plaintiff alleges that Defendants Hunt, Weatherly, and McDonald were deliberately indifferent to his serious medical needs when they denied his request for medical treatment after his cell was sprayed with pepper spray by another detention officer, Officer Vest. In count three, Plaintiff alleges that Defendant Weatherly violated Plaintiff's Eighth Amendment rights when Defendant Weatherly used excessive force by intentionally striking Plaintiff on his forehead with a "heavy brass jail key without provocation," causing a contusion and a scar.

Following the filing of the Amended Complaint, Defendants Bryant, Hunt, McDonald, and Weatherly filed a Supplement to their Motion to Dismiss or in the alternative Motion for Summary Judgment on July 28, 2014. (Doc. # 47) In their Supplemental Motion, Defendants incorporate their Motion to Dismiss or in the alternative Motion for Summary Judgment with respect to the allegations in counts one and three of the Amended Complaint.

With respect to Plaintiff's claim asserted in count two of the Amended Complaint, Defendants seek dismissal of the claim for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6) or in the alternative seek summary judgment with respect to this claim pursuant to Fed. R. Civ. P. 56(c). Because Defendants' Motions and Plaintiff's Response rely on evidentiary materials outside of the pleadings, the Motions will be considered as a Motion for Summary Judgment and Supplemental Motion for Summary Judgment.

III. Standard of Review - Motion for Summary Judgment

Summary judgment may be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court reviews the evidence and inferences drawn from the record in the light most favorable to the nonmoving party. Burke v. Utah Transit Auth. & Local, 462 F.3d 1253, 1258 (10th Cir. 2006)(quotation omitted), cert. denied, 550 U.S. 933 (2007). A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts which might affect the outcome of the suit under the governing law." Id. "At the summary judgment stage, a complainant cannot rest on mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." Burke, 462 U.S. at 1258 (internal quotation marks and citations omitted).[2] "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(quotations omitted).

Defendants have asserted the defense of qualified immunity with respect to Plaintiff's claims against them in their individual capacities. "When a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff to satisfy a strict two-part test: first, the plaintiff must show 'that the defendant's actions violated a constitutional or statutory right';

---

[2] In a prisoner civil rights case such as this one, the plaintiff's complaint is treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury. Hall, 935 F.2d at 1111.

4

second, the plaintiff must show that this right was 'clearly established at the time of the conduct at issue.'" Clark v. Edmunds, 513 F.3d 1219, 1222 (10th Cir. 2008)(quoting Nelson v. McMullen, 207 F.3d 1202, 1205 910th Cir. 2000)). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment - showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." Id. (internal quotation marks and citation omitted).

IV. Material, Undisputed Facts

The following material facts are deemed undisputed for the purpose of resolving Defendants' Motion for Summary Judgment and Supplemental Motion for Summary Judgment[3]:

1. Plaintiff was arrested in February 2012 and booked into the Jefferson County Jail ("JCJ") on March 3, 2012, where he remained in custody until January 9, 2013.

2. Defendant Bryant is the Sheriff of Jefferson County, Oklahoma. He is the final policymaker for the jail and responsible for the adoption of all policies of JCJ.

3. Defendant Weatherly is the JCJ Jail Administrator and is directly responsible for the day-to-day operations of the JCJ.

4. Defendant Hunt was a detention officer at JCJ during all times relevant to the Amended Complaint.

---

[3]Defendants' Motions each contain a Statement Of Material Facts To Which There Is No Genuine Issue. Plaintiff was advised of the provisions of Fed. R. Civ. P. 12 and 56 and LCvR 56.1(c). See Order (Doc. # 36). The facts as set forth here are taken from Defendants' Statement of Material Facts to Which There is No Genuine Issue in their Motion and Defendants' Statement of Material Facts to Which There is No Genuine Issue in their Supplemental Motion. As the Plaintiff has failed to controvert the Defendants' statements of material, undisputed in accordance with federal and local civil procedural rules, those facts are deemed admitted. See LCvR 56.1.

5. Defendant McDonald was a detention officer at JCJ during all times relevant to the Amended Complaint.

6. The policy of the JCJ is to provide appropriate medical care to any detainee who requires medical care.

7. Earlier in the day on July 11, 2012, JCJ staff was concerned that Plaintiff was sick but there was no belief or feeling that the illness was a medical emergency or that Plaintiff could not wait for a routine medical appointment.

8. During the late evening hours of July 11, 2012, Defendant Weatherly was called to the JCJ because of jail staff's concern about the medical condition of Plaintiff. Defendant Weatherly found Plaintiff to be in need of immediate medical care and at 1:43 a.m. transported Plaintiff to the local hospital for treatment.

9. At the hospital, Plaintiff was diagnosed with the beginnings of strep throat. He was given a prescription for an antibiotic medication. Plaintiff was transported back to the JCJ, where he began to receive the medication and over-the-counter pain-relieving medication.

10. Over the next couple of days, Plaintiff received his medication but did not improve. On the morning of July 13, 2012, jail staff found him in need of immediate medical care, and he was again transported to the hospital. Plaintiff was evaluated at the hospital and received two new prescriptions. He was then returned to the jail where he continued to receive the prescribed medications until the prescriptions were exhausted.

11. Plaintiff fully recovered from the strep throat.

12. In August 2012, Defendant Hunt entered Plaintiff's cell and found what he believed to be

an excessive number of books. He instructed Plaintiff to remove a number of the books from his cell, and Plaintiff allowed Defendant Hunt to remove a few of the books. Plaintiff then became irate and confrontational and refused to allow the removal of more books.

13. Defendant Hunt reported the incident to his supervisor, Defendant Weatherly, who determined that he needed to speak with Plaintiff about the issue.

14. A couple of days later, Defendants Weatherly and Hunt went to Plaintiff's cell. Plaintiff was removed from his cell and placed in a second cell, and the key used by Defendant Weatherly to open Plaintiff's cell and the second cell was a large brass key approximately six inches long and one inch thick.

15. During the ensuing conversation in the second cell the discussion between Defendant Weatherly and Plaintiff became heated and Defendant Weatherly waived his arms around.

16. Plaintiff did not request medical treatment for any injuries following this conversation, and Defendants Hunt and Weatherly did not observe any injuries to Plaintiff in connection with this conversation.

17. JCJ policy identifies when and under what circumstances a detention officer may use force against an inmate and restricts the force used to force which is reasonable under the circumstances.

18. In June 2012, JCJ Detention Officer Vest and another JCJ detainee, Mr. Robbins, who was a cell mate of Plaintiff's, were discussing pepper spray when Mr. Robbins agreed to be sprayed by Officer Vest.

19. As a result of the use of pepper spray, Plaintiff and Mr. Robbins' other cellmates were

exposed to the pepper spray.

20. Defendant Hunt became aware of the incident a few minutes later, while passing out medications to inmates. When he looked into the cell he observed Plaintiff with his inhaler in his hand. Pursuant to the jail's practice, Plaintiff was allowed to keep his inhaler in the cell with him at all times.

21. At that time, Plaintiff was able to talk to Defendant Hunt, and Defendant Hunt learned that Officer Vest had sprayed pepper spray on Mr. Robbins.

22. Officer Vest stated to Defendant Hunt that Plaintiff complained about the pepper spray and Plaintiff's asthma. Plaintiff appeared to Defendant Hunt to be breathing normally. Plaintiff was able to converse with Defendant Hunt without any apparent difficulty, and he had his inhaler.

23. Defendant Hunt observed that the inmates in the cell had showered to remove any residue from the pepper spray.

24. At no time immediately after the incident or at any later time was it apparent to Defendant Hunt that Plaintiff was having any lingering adverse effects from the pepper spray, having any difficulty breathing, or needed medical attention beyond the possible use of his inhaler.

25. Plaintiff did not complain or advise Defendant Hunt at any time that he needed any additional medical care. Following this incident, the matter was investigated internally, and Officer Vest was terminated. Plaintiff refused to participate in the investigation of the pepper spray incident.

V. <u>Deliberate Indifference to Serious Medical Needs</u>

In counts one and two of the Amended Complaint, Plaintiff alleges that Defendants

Bryant, Hunt, Weatherly, and McDonald (count one) and Defendants Hunt, Weatherly, and McDonald (count two) were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights.

In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court reiterated that a "prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Id. at 828. Because prisoners have been "stripped ... of virtually every means of self-protection and ... their access to outside aid [has been foreclosed]," the Court reasoned that "the government and its officials are not free to let the state of nature take its course." Id. at 833.

With respect to the issue of medical care, the Eighth Amendment is violated if prison officials show "deliberate indifference to an inmate's serious medical needs." Mata v. Saiz 427 F.3d 745, 751 (10th Cir. 2005). A plaintiff claiming that prison officials have been deliberately indifferent to the prisoner's medical needs must prove two elements. The prisoner must show that, objectively, the inmate's medical needs were "sufficiently serious," and, subjectively, the prison official acted with a "sufficiently culpable state of mind" such that the official knew of and disregarded an excessive risk to inmate health or safety. Self v. Crum, 439 F.3d 1227, 1230-1231 (10th Cir. 2006); see also Mata, 427 F.3d at 751. A medical need is sufficiently serious if it "has been diagnosed by a physician as mandating treatment or ... is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000)(internal quotation omitted). The prison official must also "be aware of facts from which the inference could be drawn that a substantial risk of serious harm

9

exists, and he [or she] must also draw the inference." Self, 439 F.3d at 1231 (10th Cir. 2006)(quoting Farmer, 511 U.S. at 837).

Plaintiff alleges in count one of the Amended Complaint that he "began experiencing flu-like symptoms, including headaches, body aches, nausea, [and] watery eyes" and that he endured "four days of suffering the 107°F fever with no medical attention"[4] despite "personally notif[ying]" Defendants of his symptoms and "worsening condition." Amended Complaint, at 3. However, Plaintiff does not allege that his symptoms caused any outward signs that would objectively indicate a substantial risk of serious harm to him prior to the time he collapsed on the floor at the jail. In his original Complaint, Plaintiff alleged only that hospital personnel found him to "have a fever of over 100 degrees." Complaint (Doc. # 1, at 7).

Even assuming that Plaintiff's allegations in the Amended Complaint sufficiently showed that, objectively, he was experiencing substantial symptoms related to a serious medical need, including a fever, the undisputed facts do not show that any Defendant was subjectively aware of and disregarded an excessive risk to Plaintiff's health during the four-day period prior to the first time he was transported to a hospital for medical treatment. See Self, 439 F.3d at 1232 (claim of deliberate indifference is stated if there are "recognizable symptoms which potentially create a medical emergency" and the prison official has actual knowledge of those symptoms and denies treatment). Plaintiff admits that soon after he collapsed on the floor he was transported to a hospital for medical treatment and that he subsequently received additional

---

[4] Plaintiff does not indicate how he knew his temperature was 107°F during this four-day period prior to receiving medical treatment.

medical treatment at a hospital for continuing fever and symptoms.

Although Plaintiff contends that he was returned to the jail contrary to the advice of attending doctors, Plaintiff admits he was "housed separately from the rest of the jail population" after he was returned to the jail. Id. at 4. Plaintiff does not allege in the Amended Complaint that he was denied prescribed medications for the strep throat diagnosed by hospital medical personnel, although he alleged in the original Complaint that he was "not provided with any medication." Complaint (Doc. # 1), at 7. The Special Report contains jail records reflecting that the medications prescribed by hospital personnel and over-the-counter pain medications were provided to Plaintiff beginning July 12, 2012. Special Report (Doc. # 33), Ex. 2.

Plaintiff also does not allege in the Amended Complaint that he suffered any lasting medical effects from the high fever or the alleged four-day delay in his receipt of medical treatment. The undisputed facts reflect that Plaintiff was provided the prescribed medications until the prescriptions were exhausted and that he fully recovered from the strep throat.

Plaintiff's allegations that after he was treated at a hospital a second time he had to lie on the floor without clothing and pour water on himself are vague and fail to state facts showing any Defendant was aware of a substantial risk of serious harm to Plaintiff following his second hospital visit. The undisputed facts show that the medications prescribed to treat his strep throat and over-the-counter pain medications were administered to Plaintiff and that Plaintiff fully recovered from the strep throat condition. Consequently, there is no material issue of fact for trial, and Defendants are entitled to summary judgment as a matter of law with respect to Plaintiff's claim in count one of the Amended Complaint.

The undisputed facts with respect to count two of the Amended Complaint reflect that Plaintiff was exposed to pepper spray in his cell after a jailer sprayed pepper spray into the cell toward another detainee, that Plaintiff had physical access to a prescribed inhaler for his asthma during and after this exposure, that he showered after the exposure, and that he was observed by jail officials to be talking and breathing without difficulty after the exposure. Although Plaintiff appears to disagree with Defendant Hunt's statement that he observed Plaintiff following the pepper spray incident and believed Plaintiff was not in need of further medical treatment beyond the inhaler that Plaintiff already had in his possession, Plaintiff alleged in the original Complaint that the effects of the pepper spray exposure dissipated after two hours. Complaint (Doc. # 1), at 8. There is no evidence creating even an inference that Defendant Hunt or any other Defendant knew of and disregarded an excessive risk to Plaintiff's health in light of the undisputed facts. Consequently, there is no material issue of fact for trial, and Defendants are entitled to summary judgment as a matter of law.

VI. Excessive Force Claim against Defendant Weatherly

"Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims." Craig v. Eberly, 164 F.3d 490, 495 (10th Cir. 1998). Correctional officials who cause "unnecessary and wanton infliction of pain" violate the Eighth Amendment's cruel and unusual punishment clause. Whitley v. Albers, 475 U.S. 312, 319 (1986). To determine whether an officer used excessive force, the Court must consider "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson

12

v. McMillian, 503 U.S. 1, 7 (1992). "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10.

Plaintiff alleges in count three of the Amended Complaint that he refused to allow Defendant Hunt to remove some books from Plaintiff's cell when Defendant Hunt demanded them. He alleges that Defendants Weatherly and Hunt later returned to his cell, transported Plaintiff to another cell, and Defendant Weatherly then "forcefully jabbed a large, heavy, brass jail key, which was approximately seven (7) inches long, into the center of Plaintiff's forehead" and "maintain[ed] constant pressure with the key" while verbally threatening to assault Plaintiff. Amended Complaint, at 9-10. Plaintiff alleges that the "thrusting of the key was intentional and with malice and sadistic intent to cause harm." Plaintiff admits that he did not seek medical treatment following the incident although he alleges he "suffer[ed] a contusion" that left "a small, indented scar" on his forehead. Amended Complaint, at 10. Interestingly, Plaintiff's original Complaint contains no allegation of physical injury in connection with the alleged verbal threat by Defendant Weatherly. Complaint (Doc. # 1), at 9-10. He alleged in the Complaint that Defendant Weatherly "pressed one of the [jail] keys to Plaintiff's forehead and stated 'this is my . . . jail' and 'if one of my jailers tell you to do something you do it.'" Complaint, at 9-10. Plaintiff alleges that Defendant Weatherly then threatened to assault the Plaintiff.

After the Special Report and Defendants' Motion for Summary Judgment were filed, Plaintiff filed his Amended Complaint, and for the first time Plaintiff asserts that Defendant

Weatherly "jabbed" a key into his forehead, causing physical injury to Plaintiff's forehead. Plaintiff's allegations of physical injury in the Amended Complaint are not consistent with his earlier allegations that he was verbally threatened but no actual injury occurred during the conversation.

"De minimis applications of force," such as pushing or shoving, or verbal threats and harassment, without more, do not constitute cruel and unusual punishment. Northington v. Jackson, 973 F.2d 1518, 1524 (10th Cir. 1992). See Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)(holding sheriff's idle threat to hang a prisoner did not give rise to a § 1983 claim). However, when a lethal weapon such as a revolver is employed by a law enforcement official in combination with a threat to use that weapon to shoot the prisoner, the Tenth Circuit recognized in Northington that the psychological injury suffered by the prisoner was sufficient to allege a constitutional deprivation. Northington, 973 F.2d at 1524.

Defendants do not admit that Defendant Weatherly hit Plaintiff with the key. Defendants assert only that "if [Plaintiff] was struck [with a key] it was inadvertent and was not intentional" and could have occurred only when Defendant Weatherly "waiv[ed] his arms around" during their conversation about Plaintiff's failure to comply with Defendant Hunt's orders. Defendants' Motion, at 20-21. See also Special Report (Doc. # 33), Ex. 6, at 8 (affidavit, Mr. Weatherly). Plaintiff alleges this assertion of an inadvertent striking of Plaintiff with the key is "highly suspect."

Even assuming that Defendant Weatherly struck Plaintiff with a key during an undisputedly "heated" conversation following Plaintiff's refusal to follow the order of a

detention officer, the circumstances do not show a violation of clearly established law. The circumstances in Northington involved the use of a lethal weapon. A key is simply not a lethal weapon. There is no dispute that Defendant Weatherly, as the JCJ's Jail Administrator, initiated the conversation with Plaintiff after Plaintiff refused an order of a detention officer, Defendant Hunt. Thus, the conversation during which the alleged injury occurred was undertaken in an effort to restore discipline and not simply to cause Plaintiff harm. Plaintiff's allegations of physical injury made for the first time in his Amended Complaint are not consistent with his earlier allegations that did not include an assertion of physical injury. Hence, Defendant Weatherly is entitled to qualified immunity with respect to Plaintiff's claim against him in count three of the Amended Complaint.

VII. Official Capacity Claims

In Plaintiff's request for relief, Plaintiff states that he is seeking declaratory judgment against Defendants in their official capacities. For a municipality to be liable under § 1983 for the acts of its employees, a plaintiff must prove: "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." Becker v. Bateman, 709 F.3d 1019, 1025 (10th Cir. 2013)(internal quotation marks omitted).

Plaintiff has not alleged that any municipal policy or custom caused a constitutional deprivation. In count one of the Amended Complaint, Plaintiff alleges that there was no "sick call procedure" at JCJ during his confinement there, although "[s]ome form of a sick call procedure is constitutionally required," and the "lack of an adequate sick call procedure at the

15

JCJ resulted in an unnecessary four (4) day delay in diagnosis and treatment of Plaintiff," which "unreasonably prolong[ed]" his suffering. Amended Complaint, at 5-6. The absence of a policy is not a policy. The undisputed facts in this case show that Plaintiff was transported to a hospital for medical treatment on two occasions for treatment for strep throat. Although he alleges he experienced a four-day delay in receiving medical treatment, his allegations that the delay was the result of the absence of a sick-call procedure are too conclusory to show that any municipal policy or custom caused a constitutional deprivation. Plaintiff has not alleged the presence of any municipal policy or custom in counts two or three of the Amended Complaint. Defendants are entitled to summary judgment with respect to Plaintiff's claims against them in their official capacities.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that Defendants' Motion for Summary Judgment (Doc. # 34) and Supplemental Motion for Summary Judgment (Doc. # 47) be GRANTED and that judgment issue in favor of Defendants and against the Plaintiff. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by ___September 18th___, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this   29th   day of     August    , 2014.

/s/ Gary M. Purcell
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE